Argued April 4, reversed June 1, 1972

IMPERIAL CARPET MILLS, INC., *Respondent,*
*v.* HAWLEY ET UX, *Appellants.*

497 P2d 658

*Kent Whitaker,* Portland, argued the cause for appellants. On the briefs were Frank L. Whitaker and Whitaker & Whitaker.

*William C. Ogilvy,* Portland, argued the cause for respondent. With him on the brief were Wheelock, Richardson, Niehaus, Baines and Murphy, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, and HOWELL, Justices.

O'CONNELL, C. J.

This is an action to recover the value of carpeting delivered to defendants by the plaintiff. Defendants appeal from a judgment for plaintiff.

Defendants entered into a contract with Portland Home Center for the installation of carpets and drapes in an apartment complex which defendants were then constructing. Mr. George Danner represented Portland Home Center in this transaction. Defendants paid $6,000 in advance to Danner, $1,000 to be applied on the drapery contract and $5,000 which was the price of the carpeting.

Portland Home Center ordered the carpeting from the plaintiff, a Georgia corporation engaged in the manufacture of carpeting. The carpeting was consigned to Portland Home Center and was shipped C.O.D. because plaintiff did not regard the consignee as a good credit risk.

In late January, 1969, defendants requested Mr. Danner to deliver the carpeting for which they had contracted, but no delivery was made. Thereafter,

from February to late March, defendants continued to make efforts to obtain the carpeting until finally in late March Mr. Danner informed defendants that he had sold their carpeting but volunteered to supply carpeting to complete one building. The carpeting selected by Danner was rejected by defendants on the ground that it was not suitable for their purpose.

By this time defendants were in urgent need of the carpeting because the delay in completing the apartment complex resulted in lost rent. Mr. Danner then got in touch with Mr. Abernathy, plaintiff's representative, and made a proposal which Mr. Abernathy described as follows: "Mr. Danner called me from the Portland Home Center and told me he could not handle the picking up of the carpet financially and that the carpet was needed for a job that had to go in, job was for a Boyd N. Hawley, and that he was going to send me a certain piece of paper that Mr. Hawley would sign, saying that he would guarantee X amount of dollars to us. And also, I asked for a credit reference for that and told them that once I got the piece of paper and were able to check the credit, the credit were good enough, that we would release the carpet to the Hawleys and re-bill them and credit Portland Home Center."

Mr. Danner then met with defendants, bringing with him a prepared assignment purporting to assign to plaintiff, in exchange for the release of the carpeting which plaintiff was holding, the amount due Portland Home Center from defendants. The assignment read as follows (for convenience, substituting "plaintiff" for Imperial Carpet Mills, "Portland Home Center" for assignor, and "defendants" for customer):

"In consideration of plaintiff * * * supplying

the merchandise identified below for sale by Portland Home Center to defendants, Portland Home Center hereby assigns to plaintiff all of Portland Home Center's right, title and interest in or to all moneys or payments which are payable or which become payable from defendants. Plaintiff is authorized to do all appropriate acts to effect the collection of the sums assigned hereunder in the event payment is not received by plaintiff when due. Upon receipt of the funds hereby assigned to plaintiff, plaintiff shall apply the same first upon Portland Home Center's indebtedness to plaintiff for the merchandise described below; second to plaintiff costs of collection, if any, (including attorney's fees, if any); and third, at plaintiff's discretion, either upon any other indebtedness of Portland Home Center to plaintiff or to Portland Home Center. To the extent that the funds hereby assigned remain after the foregoing applications, such remaining funds shall be paid over and delivered by plaintiff to Portland Home Center.

"Delivery of a copy of this assignment to defendants shall constitute Portland Home Center's instructions to defendants to pay the sums herein described to plaintiff. This instrument is expressly understood and agreed to constitute an assignment only and does not constitute an undertaking by plaintiff to deliver the described merchandise or to perform any obligations of Portland Home Center to defendants or otherwise.

"[Inserted in pen and ink and initialed B.N.H. and G.D.] Assigned the sum of $3,651.32 Three Thousand six Hundred Fifty one and 32/100.

"In witness whereof, the undersigned Portland Home Center has executed this assignment this 1 day of April 1969."

The assignment was then delivered to Mr. Abernathy who testified that he would accept it as additional security but insisted upon a credit reference

for the defendants since he expected them to pay for the carpeting if it was released. When Mr. Abernathy received the credit reference and assignment he called a Portland bank and secured a credit rating for defendants. He testified that he then called defendant Hazel Hawley and obtained from her verification that she wanted the carpet and that the assignment had been executed by defendant Boyd Hawley. Mrs. Hawley testified that she had no recollection of this telephone call.

Having taken these precautions, plaintiff consigned the carpeting directly to defendants. The carpeting was delivered, signed for by defendants, and placed in their apartment complex. Plaintiff billed defendants for the carpeting and upon defendants' refusal to pay this action was commenced.

The trial court held that the "[r]elease of the C. O. D. and delivery of the carpet to defendants gave rise to a contract implied in fact, and defendants' retention of the carpet gave rise to a contract implied in law."

■ We reverse. Even if we accept plaintiff's version of the facts, we do not think that the circumstances gave rise to a contract implied in fact. The assignment standing alone, even though signed by defendants, does not give rise to an implied contract that defendants would pay plaintiff for the carpet. The assignment runs between Portland Home Center as assignor and plaintiff as assignee. The consideration for the assignment was expressed to be plaintiff's "supplying the merchandise described below for *sale by Portland Home Center to defendants.*" (Emphasis added.) The assignment goes on to provide that plaintiff shall apply the funds received from defendants to Portland Home Center's indebtedness to plaintiff.

In effect, plaintiff would transpose this assignment between Portland Home Center and plaintiff as a novation obligating defendants to pay plaintiff instead of the Portland Home Center. The assignment clearly does not bear that interpretation. At most, it obligated defendants to pay over to plaintiff the amount they owed Portland Home Center. Since defendants had paid Portland Home Center for the carpet, there was no obligation which it could assign to plaintiff.

If, then, a contract is to be implied, the implication must arise out of facts apart from defendants' signing of the assignment. Plaintiff points to Mr. Abernathy's conversation with Mr. Danner in which it was understood that plaintiff was to re-bill defendants for the carpet and credit Portland Home Center for it. Assuming that this was the agreement, defendants were not parties to it. The only contact defendants had with plaintiff was at the time Mr. Abernathy called Mrs. Hawley. The substance of the conversation was that Mr. Abernathy wanted to establish that Mr. Boyd Hawley's signature on the assignment was authentic. In the course of the conversation, Mrs. Hawley said that they needed the carpet and asked Mr. Abernathy to release it to them.

If there were such a conversation (defendants deny that there was), we fail to see how any implication in support of a contract can be drawn from it. Defendants' request to release the carpeting directly to them is as consistent with an understanding that plaintiff was to receive payment pursuant to the assignment as it is that defendants would pay plaintiff directly.

In this connection it is to be noted that de-

fendants had already paid $5,000 to Portland Home Center for carpeting. If plaintiff's theory of the transaction is accepted, it could only be on the hypothesis that defendants were willing to pay plaintiff for carpeting they had already paid for and to recoup from Portland Home Center the $5,000 they had previously paid.

We do not think that the conversation between defendants and Abernathy or any other facts in the case warrant this implication. In fact, such an implication would be inconsistent with the assignment itself since it expressly treats defendants' obligation as running to Portland Home Center and not to plaintiff and that plaintiff was to receive only that which was owing to Portland Home Center.

We noted above that the assignment contained a handwritten insertion which read "Assigned the sum of $3,651.32 Three Thousand six Hundred Fifty one and 32/100." The amount for which defendants were later billed by plaintiff was $3651.70 representing the cost of the carpeting released by plaintiff.

It is plaintiff's position that the assignment constituted a commitment by defendants to pay to plaintiff $3651.32 irrespective of the contractual relationship between defendants and Portland Home Center. Defendants construe the handwritten clause as an offer by defendants to plaintiff to pay plaintiff $3651.32 out of Portland Home Center's "right, title and interest in or to all moneys or payments which are payable or which become payable" (the language of the assignment) from defendants to Portland Home Center, in consideration of plaintiff supplying the carpeting for sale by Portland Home Center to defendants.

Plaintiff's theory is acceptable only if no meaning is given to that part of the language of the assignment which transfers only those "moneys or payments which are payable or which become payable." There were no moneys payable at the date of the assignment because Portland Home Center had not performed any part of the contract.

Defendant Boyd Hawley did not testify and consequently we do not have his explanation for the handwritten insertion. But Mrs. Hawley testified and she stated that the insertion was made upon Mr. Hawley's insistence. This is undenied. Obviously Mr. Hawley would not have insisted upon the handwritten clause if it was to have the effect plaintiff puts upon it. The clause would serve defendants' interest if it is construed as expressing the balance which they felt they would be obligated to pay if Portland Home Center fulfilled its entire contract taking into account the sums already previously paid by defendants. This was Mrs. Hawley's understanding of the purpose of the added clause. She testified on cross-examination as follows:

"Q Now, the figure that's on the assignment, $3,651, how was that arrived at, the figure that Mr. Hawley insisted be put on the assignment?
"A That was the balance of materials and labor, as I recall. That was—balance of material and labor for complete installation of carpet and drapery.
"Q Due the Home Center?
"A If and when the contracts were fulfilled."

Mrs. Hawley did not know the exact amount which would have been payable on the date of the assignment after crediting defendants for the amount paid in advance to Portland Home Center. She did not explain

why the parties used the figure $3651.32, the price of the carpet which was finally delivered. It is probable that Mr. Danner in explaining the purpose of the assignment informed the Hawleys that this was the amount which would be payable to plaintiff and therefore the amount which Portland Home Center would have to assign over to plaintiff.

■ Neither plaintiff's nor defendants' explanations as to the purpose of the assignment are completely satisfactory. At best the transaction is ambiguous. In these circumstances we think that the assignment should be given the effect which assignments normally have, that is, to transfer whatever rights the assignor has against his obligor rather than construe it as creating new rights between the assignee and the obligor, as plaintiff contends.

The judgment of the trial court is reversed.